UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIC STEWART,

                Petitioner,

v.                                              Case Number 06-11741-BC
                                              Honorable Thomas L. Ludington

RAYMOND BOOKER,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Eric Stewart, presently confined at Muskegon Correctional Facility in Muskegon, Michigan, has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted of second-degree murder and possession of a firearm during the commission of a felony (felony firearm) in Wayne County Circuit Court. He was sentenced to two years in prison for the felony firearm conviction and to a consecutive term of twenty-eight to fifty years for the murder conviction. Petitioner alleges that he is incarcerated in violation of his constitutional rights to a fair trial, to confront the witnesses against him, to present a defense, and to effective assistance of counsel. Respondent has filed an answer to the habeas petition, asserting that Petitioner's claims lack merit or are procedurally defaulted. The Court agrees. Therefore, the habeas petition will be denied.

I.

Petitioner initially was charged with first-degree (premeditated) murder, two counts of felonious assault, and felony firearm. The charges arose from the fatal shooting of Derrick Walker on Ewers Street in Detroit, Michigan on August 29, 1999. Petitioner was arrested about a year after

the shooting. At his preliminary examination on September 7, 2000, Daniel Ortiz testified that he saw Petitioner shoot Walker. The district court judge dismissed the felonious assault charges and bound Petitioner over to Wayne County Circuit Court on charges of first-degree murder and felony firearm. About seven months later, the prosecutor moved to dismiss the case without prejudice because he was having problems bringing his witnesses into court. A warrant was issued a short time later, and Petitioner was re-arrested. Daniel Ortiz refused to testify at the second preliminary examination, but his testimony from the first preliminary examination was admitted in evidence. Petitioner was once again bound over to the circuit court on charges of first-degree murder and felony firearm.

The forensic pathologist testified at trial that the victim died from four gunshot wounds. Several 9 millimeter live rounds and two 9 millimeter casings were found at the crime scene. The evidence linking Petitioner to the crime was Daniel Ortiz' testimony from the preliminary examination held on September 7, 2000. The transcript of the preliminary examination was read into the record because Ortiz refused to testify at trial.[1] Ortiz testified at the preliminary examination that Petitioner and the victim, Derrick Walker, were friends and partners in an illicit drug business. A few weeks before the shooting, Petitioner and Walker got into an argument over money. On the day of the shooting, Ortiz was talking to Petitioner on a corner in the 4300 block of Ewers when Derrick Walker approached and asked Ortiz what Petitioner was doing there. Walker informed Petitioner that he did not want him around any more. Petitioner responded that he did not have to go anywhere. Walker then instructed Ortiz to go inside and get his brother, Clemente.

---

[1] The jury was told to treat Daniel Ortiz' testimony from the preliminary examination as if Ortiz had testified from the witness stand.

Clemente came outside, crossed the street, and hit Petitioner in the face. The blow temporarily stunned Petitioner, but he recovered and pulled out a nine millimeter gun and pointed the gun at Clemente, who ran away. Petitioner then turned the gun on Walker, who put up his hands and backed away. Petitioner shot Walker once before Walker turned to run. Petitioner chased Walker as Walker screamed, "Why are you doing this? We're friends." Ortiz saw Petitioner fire three gunshots, but he heard five or six gunshots and ran in the house. Meanwhile, Petitioner continued to chase Walker. Walker ran to the house where Ortiz had gone. Ortiz pulled him inside and locked the door. After Petitioner left the area, Ortiz screamed for help and dragged Walker to a friend's car. They drove down the street where they met an EMS crew. An EMS technician pulled Walker's body out of the car and took him to the hospital where he died.

Petitioner presented three witnesses at trial. Sergeant William Anderson testified that he did not recall which line-ups were conducted or the results of them. He also stated that he had attempted to serve Joseph Lazovski with a subpoena, but he did not know where to find him.

The second defense witness was Michael Lewis, who testified that he was walking down Ewers Street on August 29, 1999, when he heard a couple of gunshots and saw a man run through the alley. He described the man as four and a half to five feet tall. He did not see anything in the man's hands, and he claimed that he did not know the person and did not see Petitioner on Ewers Street that day.

Petitioner did not testify. His third and final witness was Ron Walker, who testified that he met Petitioner and Daniel Ortiz in the Wayne County Jail. Petitioner told Ron Walker that his case got dismissed. Daniel Ortiz then informed Ron Walker that he lied about Petitioner in this case and his regret for that.

On September 19, 2002, the jury found Petitioner guilty of the lesser-included offense of second-degree murder, Mich. Comp. Laws § 750.317, and felony firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner as a habitual offender to two years in prison for the felony firearm conviction and to a consecutive term of twenty-eight to fifty years for the murder conviction with 704 days of jail credit.

Petitioner raised his habeas claims in an appeal of right. The Michigan Court of Appeals affirmed his convictions, *see People v. Stewart*, No. 246334 (Mich. Ct. App. Aug. 10, 2004), and on June 16, 2005, the Michigan Supreme Court denied leave to appeal. *See People v. Stewart*, 472 Mich. 927; 697 N.W.2d 525 (2005) (table).

Petitioner filed his habeas petition on April 11, 2006. His claims are:

I. The trial court erred and denied [the] defendant's Confrontation-Clause rights when it allowed into evidence the prior recorded testimony of a witness whom the trial court itself deemed 'unreliable,' 'unworthy of belief,' and incredible.'

II. The trial court erred, and abridged the right to present a defense in refusing to give an adverse-inference instruction on missing witness Joe Lazovski, who had been unable to identify defendant in a lineup.

III. Prosecutorial misconduct denied a fair trial.

    A. By arguing that this case was "another shooting in Detroit" as reported on television and radio, the prosecutor improperly injected issues broader than the guilt or innocence of the accused.

    B. The prosecutor referred to Clemente Ortiz, Daniel Ortiz, Derek Canty, and Joe Lazovski as prosecution witnesses, but they did not testify (except that Daniel Ortiz's preliminary examination testimony was introduced). The prosecutor argued "The people did everything within our power to present those witnesses to you," witness Lazovski "is probably back in Macedonia despite very vigorous police efforts" to

> produce him, and "Certainly, the People of all the parties would have rather had [Daniel Ortiz] on the stand." The prosecutor improperly vouched for his case, asserted his personal knowledge, and violated Defendant's right of confrontation.
>
> C. The prosecutor injected issues broader than the guilt or innocence of the accused, made an improper "civic duty" argument, and undercut the burden of proof by arguing that the jury had a duty to give decedent Coleman and his family a fair trial.

IV. Over objection, the prosecutor was allowed to argue, "There are no facts out there to disprove any of" the prosecution's case, and "not one fact has been issued or put before you that disproves [prosecution witness] Daniel Ortiz's testimony." This improperly shifted the burden of proof and denied due process of law.

V. Out of the jury's presence, prosecution witness Daniel Ortiz testified he would assert his Fifth Amendment rights if called to testify. He admitted he might have lied in his preliminary examination testimony against defendant, due to prosecution threats and promises. When the prosecution introduced Ortiz' preliminary exam testimony, trial counsel ineffectively failed to introduce this separate-record testimony.

## II.

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involve/d an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). In addition, "state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

III.

A.

Petitioner alleges that the trial court deprived him of his rights under the Confrontation Clause when it admitted in evidence Daniel Ortiz' testimony from the preliminary examination.

-6-

Petitioner argues that Ortiz' prior testimony was admissible only if Ortiz was unavailable and his statements bore adequate indicia of reliability. Petitioner concedes that Ortiz was unavailable, but he contends that Ortiz' testimony at the preliminary examination did not bear satisfactory indicia of reliability. Petitioner points out that the trial court found Ortiz to be unreliable and incredible when Ortiz asserted his Fifth Amendment right to remain silent during a colloquy with the trial court. Petitioner also notes that Ortiz' testimony at the preliminary examination contradicted the testimony of the EMS technician, who claimed at trial that he never met or talked with Ortiz and did not see any Hispanics in the car with the victim. The Michigan Court of Appeals determined that the trial court did not err in admitting Ortiz' prior testimony because Ortiz was subject to cross-examination at that time.

The Confrontation Clause of the Sixth Amendment provides criminal defendants with "the right physically to face those who testify against [them], and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Testimonial evidence includes prior testimony at a preliminary hearing. *Id*.

Daniel Ortiz invoked his Fifth Amendment right not to incriminate himself in a colloquy with the trial court at Petitioner's trial. Petitioner's trial attorney conceded that Ortiz was unavailable at trial due to his invocation of the Fifth Amendment, and Petitioner's prior attorney cross-examined Ortiz at length during the preliminary examination. Because Ortiz was unavailable at trial and there was a prior opportunity to cross-examine him, Petitioner's Sixth Amendment right to cross-examine witnesses was not violated. The state appellate court's decision did not result in an unreasonable

application of *Crawford*, and Petitioner has no right to relief on the basis of his first claim.

B.

Petitioner alleges next that the trial court abridged his right to present a defense by refusing to give an adverse-inference instruction regarding Joe Lazovski, who did not testify at trial. Petitioner contends that he was entitled to an adverse-witness instruction because the prosecution failed to show due diligence in producing Lazovski. Petitioner states that Lazovski would have aided his defense by testifying that he did not identify Petitioner in a pretrial line-up. The Michigan Court of Appeals reviewed this claim and stated that there was no error requiring reversal of Petitioner's conviction.

In Michigan, "[a] prosecutor who endorses a witness . . . is obliged to exercise due diligence to produce that witness at trial." *People v. Eccles*, 260 Mich. App. 379, 388; 677 N.W.2d 76, 83 (2004). "Due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of res gestae witnesses." *People v. George*, 130 Mich. App. 174, 178; 342 N.W.2d 908, 910 (1983). If the trial court finds that the prosecutor failed to exercise due diligence, it may instruct the jury to infer that the missing witness's testimony would have been unfavorable to the prosecution. *Eccles*, 260 Mich. App. at 388; 677 N.W.2d at 83.

At a "due diligence" hearing held during trial, but outside the jury's presence, Sergeant William Anderson testified that a subpoena ordering Lazovski to appear in court had not been served on him. Sergeant Anderson explained that he had been unable to locate Lazovski, despite efforts to find him. Anderson contacted utility companies, hospitals, jails, prisons, and a fugitive task force in an effort to locate Lazovski. Anderson admitted that he personally did not contact the post office for a change of address, and he was unable to say whether anyone else had contacted the post office

for that purpose.

The trial court stated at the conclusion of the hearing that it "would have preferred another effort being made." (Tr. Sept. 18, 2002, at 121.) Although the trial court was not persuaded that the necessary efforts were made to find Lazovski, the court declined to give an adverse-inference jury instruction.

The decision whether to read an adverse-inference instruction is discretionary with the trial court. *See Eccles*, 260 Mich. App. at 389; 677 N.W.2d at 83 (stating that the Michigan Court of Appeals "review[s] a trial court's determination of due diligence and the appropriateness of a 'missing witness' instruction for an abuse of discretion"). Furthermore, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (*per curiam*)).

The constitutional component of Petitioner's claim alleges that the failure to give an adverse-inference instruction violated his right to present a defense. A defendant in a criminal trial possesses "the right to a fair opportunity to defend against the State's accusations," *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973), but the right to present a defense is not absolute. *Ferensic v. Birkett*, 501 F.3d 469, 475 (6th Cir. 2007).

Defense counsel informed the jury in his opening statement and in his closing argument that Lazovski attended a live line-up and looked at Petitioner, but could not identify anyone in the line-up. (Tr. Sept. 17, 2002, at 22; Tr. Sept. 19, 2002, at 8.) The parties also stipulated in front of the jury that Lazovski did not identify Petitioner or anyone else in a lineup. (Tr. Sept. 18, 2002, at 81.)

Therefore, the information that Petitioner sought to elicit from Lazovski was admitted through other means. Petitioner's right to defend himself was not violated by the refusal to give an adverse-inference jury instruction.

C.

Petitioner's third and fourth claims allege that the prosecutor's conduct deprived Petitioner of a fair trial. According to Petitioner, the prosecutor: (a) injected issues broader than guilt or innocence by stating that this case was "another shooting in Detroit" as reported on television and radio; (b) vouched for his case, asserted personal knowledge, and violated Petitioner's right of confrontation by referring to Clemente Ortiz, Daniel Ortiz, Derek Canty, and Lazovski as prosecution witnesses even though they did not testify and by stating that the prosecution did everything possible to present those witnesses to the jury and would have preferred to have had Daniel Ortiz testify in person; (c) made an improper "civic duty" argument and undercut the burden of proof by arguing that the jury had a duty to give decedent Henry Coleman and his family a fair trial;[2] and (d) shifted the burden of proof by stating that there were no facts disproving the prosecution's case or Daniel Ortiz' testimony.

1.

Respondent argues that Petitioner's first three arguments about the prosecutor are procedurally defaulted. A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule,

---

[2] The decedent in this case was Derrick Walker, not Henry Coleman, and Petitioner's citation to the record (T, 445; 3/18/92) does not correspond to the record in Petitioner's case.

federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants to make timely and specific objections at trial in order to preserve their claims for appellate review. *See People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). Petitioner did not object at trial to the alleged injection of issues broader than guilt or innocence, vouching, and civic duty argument. The Michigan Court of Appeals therefore reviewed those claims for plain error affecting substantial rights and concluded that Petitioner failed to establish any error, plain or otherwise.

The state appellate court's review for "plain error" constitutes enforcement of a procedural default. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). The contemporaneous-objection rule was an adequate and independent state ground for denying relief because the rule was in effect long before Petitioner's trial in 2002. Therefore, Petitioner must establish "cause and prejudice" or a "miscarriage of justice" before this Court can consider the substantive merits of his claims. Because he has not offered any argument in support of a finding of "cause" for the failure to object at trial, the Court deems the "cause and prejudice" argument abandoned. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003).

The narrow exception for fundamental miscarriages of justice requires a habeas petitioner to demonstrate that the alleged constitutional error probably resulted in the conviction of one who

is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v. Carrier*, 477 U.S. 488, 496 (1986). "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

Petitioner has not presented any new evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider Petitioner's claims that the prosecutor injected issues broader than guilt or innocence, vouched for witnesses, and made a civic duty argument.

2.

Petitioner's remaining claim about the prosecutor is that the prosecutor shifted the burden of proof when he stated that the evidence corroborated Daniel Ortiz' testimony and that "there are no facts out there to disprove any of that" and "Not one fact has been issued or put before you that disproved Daniel Ortiz's testimony." (Tr. Sept. 19, 2002, at 18.) Defense counsel objected immediately after the prosecutor made these remarks. Consequently, Petitioner's claim that the prosecutor shifted the burden of proof is not procedurally defaulted. The Michigan Court of Appeals stated that the prosecutor's argument was a fair response to defense counsel's argument and that any error was cured by the trial court's instructions to the jury.

To prevail on a claim of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's conduct infringed on a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*,

416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 1376 (2007), and "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). When determining flagrancy, courts must consider "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The prosecutor's comments that there was no evidence disproving his case or Daniel Ortiz' testimony was based on the evidence produced at trial. At no point did the prosecutor state that Petitioner had a duty to disprove the prosecution's case or to do anything else. Moreover, prosecutors are entitled to point out the lack of evidence supporting the defense theory. *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).

Even if the prosecutor's remarks were improper, they were not flagrant for the following reasons. First, the remarks could not have misled the jury or prejudiced the defense, because the trial court explained at the beginning and at the conclusion of the trial that the attorneys' arguments were not evidence, but were meant to help them understand the parties' theories. The trial court also stated that the prosecutor was required to prove the elements of the crime and that the burden of proof never shifted to the defendant to prove his innocence or to produce any evidence. (Tr. Sept.

11, 2002, at 5 and 7; Tr. Sept. 19, 2002, at 20-21.)

Second, the remarks were isolated comments made during the rebuttal argument. Prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (*en banc*). The prosecutor's rebuttal argument was a fair response to defense counsel's closing argument that Daniel Ortiz was not a credible witness, that evidence was missing, and that the prosecutor was sweeping matters under the rug.

Third, although the remarks were deliberately made, it does not appear that the prosecutor's intent was to shift the burden of proof. When defense counsel objected to the remarks, the prosecutor responded, "I don't really remember any shifting of the burden." (Tr. Sept. 19, 2002, at 18.) The trial court also did not recall an argument shifting the burden of proof. *See id*.

Finally, the strength of the evidence against Petitioner was substantial. Daniel Ortiz' testimony, as read to the jury, established that Petitioner shot the victim without justification and with the requisite intent to kill.

The Court concludes that the prosecutor's comments were proper and even if they were improper, they were not flagrant. Therefore, the state appellate court's determination that Petitioner's prosecutorial-misconduct claim lacked merit did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

D.

Petitioner's fifth and final claim alleges that his attorney provided ineffective assistance by not seeking to admit in evidence Daniel Ortiz' colloquy with the trial court in the jury's absence.

Ortiz informed the trial court during the colloquy that the prosecution had threatened him and made promises, which it did not keep, in order to induce him to testify at the preliminary examination. He stated that he may have lied at the preliminary examination, but that he did not recall exactly what he had said then, and he refused to testify at trial. (Tr. Sept. 17, 2002, at 84-96.) The Michigan Court of Appeals determined that, even if counsel's performance was deficient, the admission of the colloquy would not have affected the outcome of the trial and, therefore, defense counsel was not ineffective.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established [f]ederal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams v. Taylor*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. He also must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Although defense counsel did not move to admit Daniel Ortiz' colloquy with the trial court, counsel did attempt to prevent the prosecution from reading Ortiz' prior testimony. Counsel argued that the preliminary-examination transcript was unreliable because the jury would not hear Ortiz' comments to the trial court that he was given promises and was threatened in order to induce him testify against Petitioner at the examination. (Tr. Sept. 18, 2002, at 8-10.) Defense counsel also asked for a curative jury instruction explaining that Ortiz had supplemented his preliminary-

examination testimony with statements that he was threatened and promised a recommendation to the Parole Board for his testimony. (*Id*. at 15.) Following the trial court's charge to the jury, defense counsel renewed his request for an instruction that promises were made to Ortiz. (Tr. Sept. 19, 2002, at 34.) To summarize, defense counsel made three attempts to either prevent the jury from hearing Ortiz' prior testimony or to mitigate the impact of that testimony.

Petitioner nevertheless maintains that defense counsel should have asked the trial court to read to the jury the colloquy between the trial court and Daniel Ortiz. The Michigan Court of Appeals implied in its decision that the colloquy would have been admissible under Michigan Rule of Evidence 806 (attacking and supporting credibility of declarant).[3] Although the colloquy was not read to the jury, Ron Walker testified that Ortiz had said he lied about Petitioner at the preliminary examination and that Ortiz did not want to testify against Petitioner at trial because he did not want to lie about him there. (Tr. Sept. 18, 2002, at 101-02 and 110-11.)

Furthermore, it is unlikely that the trial court would have granted defense counsel's request to read the colloquy if counsel had made the request. The trial court concluded from Ortiz' colloquy

---

[3] This rule provides:

Rule 806. ATTACKING AND SUPPORTING CREDIBILITY OF DECLARANT

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C),(D) or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

with the court that the prosecutor did not make any promises to Ortiz and did not threaten him.[4] That court said that Ortiz' statements to the court were "incredible" because Ortiz "literally used every excuse imaginable not to testify." The court also said that Ortiz' brief testimony outside the jurors' presence "was just so unreliable that it's unworthy of belief." The court then declined to give a curative jury instruction regarding threats or promises allegedly made to Ortiz to induce him to testify. (Tr. Sept. 18, 2002, at 14-16.)

Even if the trial court had granted a request to admit the colloquy between the court and Ortiz, the prosecutor likely would have elicited testimony that Ortiz' statement to the police a day or two after the preliminary examination was consistent with his testimony at the preliminary examination. The prosecutor also could have pointed out that, at the second preliminary examination, Ortiz indicated that he gave honest and truthful testimony at the first preliminary examination. (Tr. July 9, 2001, at 23.) For all these reasons, the Court concludes that defense counsel's performance was not ineffective, and even if it was, the deficient performance did not prejudice the defense.

IV.

The state appellate court's decision in this case was not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Therefore, Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

---

[4] The state district court judge reached a similar conclusion, stating that, "[i]f anything, [the prosecution's] actions were tak[en] to strong arm him into testifying. (Tr. July 9, 2001, at 41.)

Reasonable jurists would not debate the Court's assessment of Petitioner's constitutional claims. Nor would reasonable jurists debate whether the Court was correct in finding that Petitioner procedurally defaulted most of his prosecutorial-misconduct claims. Accordingly, it is further **ORDERED**, pursuant to *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), that a certificate of appealability is **DENIED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: June 17, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 17, 2008.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---